## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| BENJAMIN SANGRAAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 16−cv–0550-MJR |
| | ) | |
| JULIUS FLAGG, | ) | |
| JIMMY D. LEEK, | ) | |
| MCCABE, | ) | |
| D. DOWNS, | ) | |
| JOHN A. DRANNAN, | ) | |
| PITTS, | ) | |
| GREG SCHWARTZ, | ) | |
| CHRISTOPHER JOHNSON, | ) | |
| STEPHEN A. JOHNSON, | ) | |
| TYSHA A. MATHIS, | ) | |
| MARK A. BURTON, | ) | |
| BRAD RITZHEIMER, | ) | |
| MCCANCE, | ) | |
| TYONE MURRAY, | ) | |
| LUCY HEMKER, | ) | |
| AUSTIN, and | ) | |
| UNKNOWN JOHN DOE | ) | |
| DEFENDANTS | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Benjamin Sangraal, formerly an inmate at Centralia Correctional Center
and Pickneyville Correctional Center, brings this action for deprivations of his
constitutional rights pursuant to 42 U.S.C. § 1983.  Although Plaintiff is no longer

incarcerated, he has moved to proceed pro-se in the action.   Therefore the Court will

conduct a preliminary review of the complaint pursuant to 28 U.S.C. § 1915(e)(2), which

provides:

> Not withstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss at any time if the court determines that the action or appeal
> 
> i.    is frivolous or malicious;
> ii.   fails to state a claim on which relief may be granted; or
> iii.  seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in

fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  An action fails to state a claim upon

which relief can be granted if it does not plead "enough facts to state a claim to relief

that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Conversely, a complaint is plausible on its face "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although

the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d

418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that

they fail to provide sufficient notice of a plaintiff's claim.  *Brooks v. Ross*, 578 F.3d 574,

581 (7th Cir. 2009).   Additionally, Courts "should not accept as adequate abstract

recitations of the elements of a cause of action or conclusory legal statements." *Id*.  At

the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915; portions of this action are subject to summary dismissal.

### The Complaint

Plaintiff filed a typed 62 page complaint, one which falls just short of violating Rule 8's mandate that complaints should be short and plain. Nevertheless, while much of Plaintiff's complaint lapses into argument, which is improper in a complaint, he does manage to articulate some cognizable claims.

Plaintiff, a practicing Pagan, set up a Pagan/Wiccan study circle at Centralia. (Doc. 1, p. 1-2). Despite this, he remained unsatisfied with the degree of accommodation to his religious practices at the prison, and filed a lawsuit alleging certain violations of his religious rights. (Doc. 1, p. 2). Plaintiff filed the lawsuit on June 4, 2014, see Case No. 14-cv-661, although he alleges that he finished writing it on May 12, 2014 and that the defendants were aware that he intended to file it as of that date. (Doc. 1, p. 14). Plaintiff alleges that other inmates wished to join in his lawsuit, and to that end, he prepared form grievances for them to sign. (Doc. 1, p. 11-12). Three inmates submitted identical grievances with their personal information and signatures, while another copied out the template Plaintiff had provided in longhand. (Doc. 1, p. 12). Altogether, four inmates submitted grievances based on Plaintiff's template.

On May 14, 2014, Leek interviewed Plaintiff regarding the three identical grievances, at McCabe's direction.   (Doc. 1, p. 15).  Leek then wrote Plaintiff a disciplinary ticket dated May 16, 2014 for the offenses 309 "Petitions" and 310 "Abuse of Privileges," based on Plaintiff's conduct in preparing the grievances for others.  (Doc. 1, p. 17).  The ticket was sanctioned by Greg Schwartz and served by L. Waters.  (Doc. 1, p. 17).  Counselor Murray rejected three out of the four ghostwritten grievances, as well as Plaintiff's own grievance, on May 15, 2014.  (Doc. 1, p. 16-17).

Plaintiff wrote an emergency grievance to Warden Flagg regarding his impending disciplinary hearing, but the grievance was rejected as a non-emergency. (Doc. 1, p. 16).

The adjustment committee, consisting of Stephen Johnson, McCance, and Mathias, held hearing on May 19, 2014.  (Doc. 1, p. 20).  Plaintiff alleges that Stephen Johnson and McCance should have recused themselves because Plaintiff filed grievances against them in the past.  (Doc. 1, p. 20).  Plaintiff further alleges that he was not permitted to call any witnesses to the hearing via institutional mail, and that a correctional counselor should have been present.  (Doc. 1, p. 19-20).  He was allegedly not granted a continuance so that he could call witnesses.  (Doc. 1, p. 20).  Plaintiff was also not permitted to submit a four page written statement that he had prepared because he did not have copies, and so was forced to read it aloud.  (Doc. 1, p. 20). While Plaintiff read his statement, Mathias made "abusive personal" comments towards Plaintiff, specifically, "You think you're so smart . . . look where that's got

you." (Doc. 1, p. 21).  The committee sentenced Plaintiff to one month segregation, two months of c-grade, two months exercise restriction and a disciplinary transfer to a higher-security facility.  (Doc. 1, p. 22).  Plaintiff alleges that Flagg conspired with the members of the adjustment committee to produce this outcome in order to transfer Plaintiff to moot the claims for injunctive relief in Sangraal v. Godinez, 14-cv-661.

Plaintiff's personal property was then searched on May 19, 2014 due to his placement in segregation.  (Doc. 1, p. 22).  During the search, Officers Downs and Drannan found Plaintiff's journal.  (Doc. 1, p. 22).  The first page of the journal contained a notice: "Privileged Material Attorney-Client Work Product Record."  (Doc. 1, p. 22).  The officers read the journal in its entirety.  (Doc. 1, p. 22).  The journal contained descriptions of instances of staff misconduct, documentation regarding grievances and legal filings, notes on Plaintiff's physical and mental condition, thoughts, dreams, spiritual experiences, etc.  (Doc. 1, p. 22-23).  Prison staff accused Plaintiff of including accounts of sexual activity between Plaintiff and his cellmate in the journal, in violation of the Prison Rape Elimination Act.  (Doc. 1, p. 26).

Drannan and Downs wrote Plaintiff a disciplinary ticket for 308 contraband/unauthorized property for having excess property.  (Doc. 1, p. 23).  Pitts signed off on the ticket.  (Doc. 1, p. 23).  Plaintiff alleges that this ticket was issued due to continuing retaliation.  (Doc. 1, p. 23).  In fact, Plaintiff's property had been inspected the morning of May 19, 2014 during a routine compliance check, and nothing had been found amiss.  (Doc. 1, p. 23).  Plaintiff's entire stash of foodstuff was confiscated, along

with a large plastic bowl he used to prepare meals, which he was not able to replace. (Doc. 1, p. 24).

Plaintiff was not given a hearing on the excess property ticket; instead, the disciplinary report was allegedly falsified to show that he pled guilty on May 22, 2014. (Doc. 1, p. 24).   When Plaintiff was released from segregation, he found that his property box was only half full.  (Doc. 1, p. 24).

Plaintiff met with Christopher Johnson of Internal Affairs on May 21, 2014.  (Doc. 1, p. 25).   Christopher Johnson told Plaintiff that the warden was aware of his complaints about retaliation, and that he had ordered Plaintiff's placement in segregation.  (Doc. 1, p. 25).  Christopher Johnson revealed that Hemker had searched Plaintiff's legal box and discovered material that she believed was not legal.  (Doc. 1, p. 25).  Plaintiff maintains that all the property in his box was legal, although he characterized certain creative works in his box as legal because he intended to copyright them.  Christopher Johnson then produced the disputed box and ordered Plaintiff to open several sealed envelopes in the box, or face additional disciplinary charges.  (Doc. 1, p. 26).  Christopher Johnson conceded that the sealed envelopes contained legal materials.  (Doc. 1, p. 26).

Christopher Johnson questioned Plaintiff about the sexual passages in his journal.  (Doc. 1, p. 27).  Under duress, Plaintiff told Johnson that the accounts were fantasies.  (Doc. 1, p. 27).  Christopher Johnson then allegedly interviewed Plaintiff's cellmate and showed him the journal.  (Doc. 1, p. 27).  Plaintiff alleges that as a result of

this incident, rumors about Plaintiff's sexuality spread through Centralia and Pickneyville, exposing him to risk from the inmate population.  (Doc. 1, p. 27).  Plaintiff was ultimately issued a disciplinary ticket based on his journal for 204 insolence, 308 contraband, and 310 abuse of privileges.  (Doc. 1, p. 29).  The ticket was written by Christopher Johnson, sanctioned by Schwartz and investigated by McCance.  (Doc. 1, p. 29).

That disciplinary ticket regarding the journal was heard on May 27, 2014 by Stephen Johnson, Burton, and Ritzheimer.  (Doc. 1, p. 30).  Burton was the only person present when Plaintiff arrived; he smirked at Plaintiff and told him "Everything's funny."  (Doc. 1, p. 31).  Plaintiff also noticed the Burton had already filed out the segregation placement form with Plaintiff's information prior to any hearing being conducted.  (Doc. 1, p. 31).  Plaintiff alleges that Burton was biased against him prior to the hearing, and continually interrupted and harassed him during the hearing.  (Doc. 1, p. 32, 34).  No counselor was provided at the hearing.  (Doc. 1, p. 31).  Plaintiff was sentenced to one month of segregation, two months of c-grade, and two months exercise restriction.  (Doc. 1, p. 34).  Flagg signed off on the adjustment committee report.  (Doc. 1, p. 35).

Plaintiff's journal was never returned.  (Doc. 1, p. 35).  Plaintiff alleges that the failure to return the journal, which allegedly contained details of numerous interactions with IDOC staff that violated Plaintiff's civil rights, made filing these claims impractical or impossible.  (Doc. 1, p. 35).

Also, on May 27, 2014, Christopher Johnson brought Plaintiff a mail-voucher to sign in order to send the non-legal materials found in his legal property box out of the institution.  (Doc. 1, p. 35).  Plaintiff started to ask why he had to send the material out as it was not contraband, when Christopher Johnson became visibly irate and yelled "I'm not going over this with you!  I'll just write you a ticket then!" and slammed the chuck hole.  (Doc. 1, p. 36).  Plaintiff received a disciplinary ticket for this incident on May 29, 2014 for 303 false information, 308 contraband, and 310 abuse of privileges. (Doc. 1, p. 37).  Christopher Johnson wrote the ticket, Schwartz sanctioned it, and Ritzheimer served it.  (Doc. 1, p. 37).  Although Plaintiff eventually signed a voucher so that the materials could be mailed out to his family, they were ultimately forwarded to him at Pickneyville, despite the fact that his account was debited $6.99.  (Doc. 1, p. 42).

Plaintiff appeared before an adjustment committee consisting of Stephen Johnson, Burton, and McCance on June 5, 2014 on charges stemming from his alleged refusal to mail out the non-legal materials found in his legal property box.  (Doc. 1, p. 40).  Plaintiff objected to these officers, as he had just named them enemies on June 3, 2014.  (Doc. 1p. 40-41).  Plaintiff requested his cell mate as a witness, but his cell mate was released from prison prior to the hearing.  (Doc. 1, p. 41).  Burton once again made hostile comments to Plaintiff throughout the hearing.  (Doc. 1, p. 41). Plaintiff also believes that Stephen Johnson did not properly consider his rebuttal arguments or evidence.  (Doc. 1, p. 42).  Flagg signed off on the adjustment committee report on June 5, 2014.  (Doc. 1, p. 42).

Plaintiff alleges that as a result of the time he spent in segregation at Centralia, he was unable to attend Pagan religious services, lost phone privileges, and had diminished access to law library materials.  (Doc. 1, p. 43-45).  He further alleges that as a result of his disciplinary transfer to Pickneyville, he lost his LED television through property damage, lost weight because Pickneyville's two-meal plan is inadequate, suffered from fewer exercise opportunities and smaller cells, lost muscle tone, had fewer opportunities to use the phone, received fewer visits from his mother, and was deprived of all Pagan worship opportunities and a Pagan diet.  (Doc. 1 p. 45-48).  Plaintiff also alleges that an unknown IA officer at Pickneyville threatened him to prevent him from filing more grievances and told him that he had been "warned" about Plaintiff by one or more persons at Centralia.  (Doc. 1, p. 48).

<u>Discussion</u>

Plaintiff divided his complaint into approximately 67 individual counts.  Previously, based on the allegations of the complaint, the Court found it convenient to divide the pro se action into a mere 23 counts.  Two claims were severed off into separate cases.  (Doc. 5).  Twenty one claims proceeded in this case, and are now subject to review.   The following claims survive threshold review.

**Count 1 – Leek, McCabe, Schwartz, Flagg, Pitts, Downs, Austin, Christopher Johnson, and Drannan retaliated against Plaintiff for engaging in protected conduct by writing Plaintiff four disciplinary tickets**

**Count 2: Stephen Johnson, Mathis, McCance, and Flagg retaliated against Plaintiff when they found him guilty of the disciplinary ticket on 5/19/14**

**Count 3:** Stephen Johnson, Mathis, McCance, Flagg, and John Doe improperly burdened the exercise of Plaintiff's religion by approving a disciplinary transfer to Pickneyville Correctional Center in violation of the First Amendment

**Count 4:** Stephen Johnson, Burton and Ritzheimer retaliated against Plaintiff when they found him guilty on the third disciplinary ticket on 5/27/14.

**Count 5:** Stephen Johnson, McCance, Burton, and Flagg retaliated against Plaintiff when they found him guilty of the fourth disciplinary ticket on 6/5/14

**Count 6:** Flagg improperly burdened Plaintiff's exercise of his religion when he refused to allow him to attend chapel service while in segregation

Plaintiff has also attempted to bring other Counts, but for the reasons elucidated below, these claims do not survive threshold review

**Count 7:** Hemker violated Plaintiff's right of access to the Courts when he charged him for case law due to his status as a segregation inmate

**Count 8:** John Doe retaliated against Plaintiff when he contacted internal affairs at Pickneyville to warn them about Plaintiff's practice of filing complaints and grievances

**Count 9:** Stephen Johnson, Mathis, and McCance violated Plaintiff's due process rights via the manner in which the 5/19/14 disciplinary hearing was conducted and by finding Plaintiff guilty

**Count 10:** Stephen Johnson, Mathis, McCance, Flagg, Burton, and Ritzheimer conspired to violate Plaintiff's due process rights when they found Plaintiff guilty of discipline on 5/19/14, 5/27/14, and 6/5/14

**Count 11:** Stephen Johnson, Mathis, McCance and Flagg violated the equal protection clause of the Fourteenth Amendment by singling Plaintiff out on the basis of his religion.

**Count 12:** Pitts, Downs, Drannan, Christopher Johnson, and Austin violated Plaintiff's First Amendment and Fourth Amendment rights when they read and confiscated his legal work-product journal

**Count 13:** Flagg, Pitts, Downs, Burton and Drannan violated Plaintiff's due process rights by issuing and finding him guilty on the second disciplinary ticket without a hearing on 5/27/14

Count 14:  Hemker, Christopher Johnson, and Austin violated Plaintiff's rights under the First and Fourth Amendments by searching Plaintiff's sealed legal materials outside of his presence and directing him to open others.

Count 15:  Christopher Johnson violated Plaintiff's Eighth Amendment rights and retaliated against Plaintiff when he discussed the contents of Plaintiff's journal with his cellmate, causing Plaintiff to have a reasonable expectation of experiencing harm

Count 16:   Schwartz and Christopher Johnson violated Plaintiff's equal protection rights to the extent that the third disciplinary ticket was issued on the basis of Plaintiff's perceived sexual orientation.

Count 17:  Schwartz and Johnson retaliated against Plaintiff based on the content of his journal

Count 18:  Lt. Johnson, McCance, and Burton violated Plaintiff's due process rights due to the manner in which the hearing on the third disciplinary ticket was conducted on 6/5/14

Count 19:   Christopher Johnson and McCance violated Plaintiff's First Amendment, Fourth Amendment, Fifth Amendment, Fourteenth Amendment rights, and violated Illinois State law when they confiscated Plaintiff's journal.

Count 20:  Christopher Johnson has interfered with Plaintiff's right of access to the Courts by confiscating Plaintiff's journal

Count 21: Christopher Johnson and John Doe violated Plaintiff's Fifth Amendment, Fourteenth Amendments, and rights under Illinois state law when they fraudulently charged him $6.99 to mail out his property and then failed to mail out his property

In **Count 1,** Plaintiff alleges that all of the disciplinary tickets were part of a pattern of retaliation for his protected conduct of preparing a lawsuit and writing three grievances on behalf of other prisoners so that they might participate in Plaintiff's lawsuit.  "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226

F.3d 568, 573 (7th Cir. 2000) (citation omitted).   At issue here is whether Plaintiff experienced an adverse action that would likely deter constitutionally protected activity in the future, and if the First Amendment activity was "at least a motivating factor" behind Plaintiff's disciplinary tickets. *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009).

Plaintiff's complaint identifies one problem with characterizing his prior lawsuit as protected conduct—the conduct Plaintiff complains of began on May 14, 2014, but Plaintiff did not actually file his lawsuit until June 4, 2014.   Plaintiff attempts to get around this problem by alleging that he mentioned the lawsuit during a monitored telephone call and that therefore, all of the defendants knew about it.   Even if everyone named in the complaint did have knowledge of the lawsuit, the mere threat that an inmate is going to engage in protected conduct in the future is not sufficient to state a claim upon which relief could be granted.   *See Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009) ("But it seems implausible that a threat to file a grievance would itself constitute a First Amendment-protected grievance.").   Therefore, to the extent that Plaintiff seeks to bring a retaliation claim premised on his anticipation of filing, that claim must fail.

Plaintiff's claims that he was retaliated against for writing grievances on behalf of other prisoners survive threshold review.   Plaintiff has alleged that he was acting as a jailhouse lawyer on behalf of the other inmates.   The Seventh Circuit previously held that "[i]f a prisoner is transferred for exercising his own right of access to the courts, or for assisting others in exercising their right of access to the courts, he has a claim under

§ 1983." *Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996). Moreover, jailhouse lawyers have standing to assert their fellow inmates' denial of access claims. *Bridges*, 557 F.3d at 554. Otherwise, prison officials could merely transfer uppity jailhouse lawyers and leave other inmates "without an alternate means of access to the courts." *Id.*; *see also Johnson v. Avery,* 393 U.S. 483, 487 (1969) (invalidating a prison regulation prohibiting habeas petitioners from obtaining the assistance of a jailhouse lawyer). Therefore Plaintiff's claim that he was retaliated against for writing grievances on behalf of others as a jailhouse attorney will proceed.

Likewise, Plaintiff's claims in **Counts 2, 4 and 5**, which also alleged retaliation survive, to the extent that they are premised on Plaintiff's conduct in assisting other inmates write grievances. Again, those Counts do not state a claim based on Plaintiff's anticipation of filing his lawsuit.

Plaintiff's **Count 3** and **Count 6** will also be allowed to proceed. The Seventh Circuit recognized years ago that "while freedom to believe is absolute, the exercise of religion is not . . . ." *Childs v. Duckworth*, 705 F.2d 915, 920 (7th Cir. 1983), and "prison officials may legitimately impose certain restrictions on the practice of religion in prison . . ." where there is a compelling interest. *Id.* (citations omitted). Legitimate penological interests include the preservation of security in prison, as well as economic concerns. *See Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009). When these concerns are raised as justifications by prison officials for their actions that restrict the practice of religion, the Court looks at four factors to determine whether the restriction is constitutional:

> (1) whether the restriction "is rationally related to a legitimate and neutral governmental objective"; (2) "whether there are alternative means of exercising the right that remain open to the inmate"; (3) "what impact an accommodation of the asserted right will have on guards and other inmates"; and (4) "whether there are obvious alternatives to the [restriction] that show that it is an exaggerated response to [penological] concerns."

*Id.* (citing *Lindell v. Frank*, 377 F.3d 655, 657 (7th Cir. 2004)).

Plaintiff complains that he practices a minority religion that only holds services at certain institutions and that knowing this, the guards deliberately transferred him to an institution that did not hold services. Plaintiff pleaded that group practice is central to his faith, and by limiting his access to a Pagan/Wiccan group, officials have restricted the practice of his religion. At this stage, Plaintiff shall be permitted to proceed on these allegations against Stephen Johnson, Mathis, McCance, Flagg, and John Doe.

Plaintiff has also alleged that he was not permitted to attend group worship services while in segregation. Plaintiff alleges that this was a discretionary decision and that the relevant regulations permitted the warden to decide whether he should participate in group worship. Plaintiff has further alleged that he was not a violent inmate, and had no gang affiliation that would have justified the decision to deny him access to group worship. On these allegations, Plaintiff has sufficiently stated a claim for burdening his free exercise of religion against Flagg in **Count 6**.

Plaintiff's remaining claims must be dismissed, however. In **Count 7**, Plaintiff alleges that his access to courts was interfered with when Hemker charged him a fee for

legal copies while he was in segregation.  He further alleges that on May 29, 2014 he did not receive all of his requested case law.  Plaintiff alleges that Hemker acted to "restrict" his ability to file his 2014 civil rights complaint.  The Court notes that elsewhere in Plaintiff's Complaint, he has alleged he finished *Sangraal v. Godinez* on May 12, 2014, two weeks before the conduct complained of here.  (Doc. 1, p. 14).  Plaintiff also successfully filed that complaint on June 4, 2014.

Prison officials have an affirmative duty to provide inmates with reasonable access to courts, which includes providing access to adequate libraries (or counsel).  *DeMallory v. Cullen*, 855 F.2d 442, 446 (7th Cir. 1988).  The right of access "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  *Bounds v. Smith*, 430 U.S. 817, 828 (1977).  Nonetheless, reasonable access does not mean unlimited access.  *Hossman v. Sprandlin*, 812 F.2d 1019, 1021 (7th Cir. 1987); *Martin v. Davies,* 917 F.2d 336, 338 (7th Cir. 1990).  Violations of the right of access to the courts may be vindicated in federal court in a civil rights action pursuant to 42 U.S.C. § 1983.

An allegation of actual or threatened detriment is an essential element of a § 1983 action for denial of access to the courts, *Martin* 917 F.2d at 340; *Howland v. Kilquist,* 833 F.2d 639, 642-43 (7th Cir. 1987); *Hossman,* 812 F.2d at 1021-22.  Such an allegation must be more than merely conclusory.

> The requirement that prisoners making access-to-courts claims allege specific prejudice should not be understood as an onerous fact-pleading burden; it is simply a requirement that a prisoner's complaint spell out, in minimal detail, the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions.

*Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006).

The complaint must "'allow the court to determine at the outset of the litigation, before costly discovery is undertaken, whether the plaintiff has any tenable theory or basis of suit,' and . . . place the defendants on notice of the plaintiff's claim so that they can begin to prepare their defense."  *Pratt v. Tarr*, 464 F.3d 730, 733 (7th Cir. 2006) (quoting *Ryan v. Mary Immaculate Queen Center,* 188 F.3d 857, 860 (7th Cir.1999))

The Court first notes that Plaintiff's claim that he was charged for copies of case law does not state a claim upon which relief could be granted.  While the prison is obligated to provide an inmate with access to the courts, funds expended on doing so can be recouped when the inmate receives income to his trust fund account.  *See Bounds v. Smith*, 430 U.S. 817 (1977); *Gaines v. Lane*, 790 F.2d 1299, 1308 (7th Cir. 1986) (inmates do not have a right to unlimited free legal postage; costs can be deducted from inmate trust account).  Therefore, Plaintiff cannot complain about the prison recouping the costs advanced for his litigation expenses.

Plaintiff's other allegations fail to state a clam for denial of access to courts. While Plaintiff has alleged that Hemker hindered his ability to complete his prior lawsuit, he has also inconsistently alleged that he successfully filed that lawsuit.

Plaintiff must allege that he actually suffered a detriment; it is not enough to say that Hemker made things slightly less convenient for him. Plaintiff has not alleged that he lost any claims or missed any deadlines because of Hemker's conduct. Therefore at this stage, **Count 7** must be dismissed without prejudice.

**Count 20** fails for the same reason. Plaintiff has alleged that the loss of his journal, which contained entries related to potential constitutional violations, violated his right to access the courts. But Plaintiff has not identified any detriment he suffered as a result of the journal's loss. He merely makes the conclusory allegation that the journal contained entries that may have been relevant to litigation. Plaintiff must identify specific claims that he cannot now bring because of the journal's loss. It is also insufficient to plead that the journal would have been relevant to certain claims; the allegations must be that the claims were totally frustrated or impeded. **Count 20** will also be dismissed without prejudice.

**Count 8** must also be dismissed. Plaintiff has alleged that a John Doe officer at Centralia called an IA officer at Pickneyville to warn them about Plaintiff in retaliation for Plaintiff's protected conduct. However, other than being informed of the phone call, Plaintiff has not alleged that he suffered any detriment as a result of the alleged retaliation. A phone call is not an "adverse action." He has also not alleged that being informed of that phone call would cause a person of ordinary firmness to refrain from engaging in protected conduct. At this time, **Count 8** will be dismissed **without prejudice** for failure to state a claim.

Plaintiff has also attempted to bring several due process claims in **Counts 9, 13 and 18**.  It is important to note what due process is not.  Due process in a constitutional sense does not require that the prison follow their internal rules and regulations.  Plaintiff has no constitutional interest in the IDOC's adherence to their own policy and cannot bring a § 1983 claim on that ground.  Noncompliance with prison regulations will rise to a due process violation only where those regulations have created a liberty interest.   A liberty interest is created only where prison regulations act to protect prisoners from an "atypical or significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Crowder v. True*, 74 F.3d 812, 814 (7th Cir. 1996); *Jones v. Cross*, 637 F.3d 841, 846 (7th Cir. 2011) (short delays in disciplinary hearing process did not cause an "atypical or significant hardship;" regulations do not give rise to a protected liberty interest).  Nor will the Court provide a de novo review of prison discipline.  Plaintiff spends large portions of the Complaint arguing that certain interpretations of rules and regulations by staff at Centralia were wrong.  That is not for this Court to say.

When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law.  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her confinement impose "atypical and significant hardship . . . in relation to the ordinary incidents of prison life."  *Sandin v.*

*Conner*, 515 U.S. 472, 484 (1995).  The Seventh Circuit Court of Appeals has adopted an extremely stringent interpretation of *Sandin*.  In this Circuit, a prisoner in disciplinary segregation at a state prison has a liberty interest in remaining in the general prison population only if the conditions under which he or she is confined are substantially more restrictive than administrative segregation at the most secure prison in that state. *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997).  If the inmate is housed at the most restrictive prison in the state, he or she must show that disciplinary segregation there is substantially more restrictive than administrative segregation at that prison.  *Id.*  In the view of the Seventh Circuit Court of Appeals, after *Sandin* "the right to litigate disciplinary confinements has become vanishingly small."  *Id.*  Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty."  *Id.*

In the case currently before the Court, Plaintiff was sent to disciplinary segregation for approximately 60 days.  Nothing in the complaint or exhibits suggests that the conditions that he had to endure while in disciplinary segregation were substantially more restrictive than administrative segregation in the most secure prison in the State of Illinois.  Plaintiff claims that he was unable to worship while in segregation, lost phone privileges, and had to use the law clerk system instead of accessing the law library generally.  These are all privileges; Plaintiff has pleaded no

facts suggesting that the *conditions* he endured were worse than administrative segregation at Menard Correctional Center.   These counts must therefore be dismissed.

Plaintiff's due process claims regarding his disciplinary transfer fail for the same reason.   "[P]risoners possess neither liberty nor property in their classifications and prison assignments. States may move their charges to any prison in the system." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)).   *See also Meachum v. Fano*, 427 U.S. 215, 224 (1976) (the Constitution does not guarantee placement in a particular prison). Therefore, all of Plaintiff's due process claims are without merit.   **Counts 9, 13, 18** will be **DISMISSED with prejudice**.

Plaintiff has also alleged that the disciplinary outcomes were part of a conspiracy against him in **Count 10**.   To prove a § 1983 conspiracy claim, the plaintiff must show that 1) a state official and a private individual reached an understanding to deprive the plaintiff of his constitutional rights, and 2) those individuals were willful participants in the unlawful activity with the state actor.   *Cooney v. Casady*, 735 F.3d 514, 518 (7th Cir. 2013) (citing *Lewis v. Mills*, 677 F.3d 324, 333 (7th Cir. 2012)).   Typically, the evidence must reflect a "concerted effort" between the parties.   *Whitlock v. Brueggemann*, 682 F.3d 567, 577 (7th Cir. 2012).   It is not enough for the conspirators to share the same objective, rather a conspiracy requires that there be an agreement, express or implied, to reach a desired result.   *Cooney*, 735 F.3d at 519 (internal quotations omitted).

All the Defendants in this case are state actors.   It is likely that this claim is superfluous and unnecessary.   *See Turley v. Rednour*, 729 F.3d 645, 649 n. 2 (citing *Fairley*

*v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009) (finding that the function of a § 1985 conspiracy claim is to "permit recovery from a private actor who has conspired with state actors" and without private actors, the conspiracy claim adds only "needless complexity.")).  And even if it wasn't, Plaintiff has failed to allege any agreement on behalf of the Defendants to deprive him of his constitutional rights.  For these reasons, Plaintiff's conspiracy claim will be **DISMISSED with prejudice**.

Plaintiff's claims that Defendants violated the equal protection clause in **Count 11 and Count 16** will also be **DISMISSED**.     A "prison administrative decision may give rise to an equal protection claim only if the plaintiff can establish that 'state officials had purposefully and intentionally discriminated against him.'"  *Meriwether v. Faulkner*, 821 F.2d 408, 415 n.7 (7th Cir. 1987), *cert. denied*, 484 U.S. 935 (1987) (citing *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)).

> The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action.    A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation.   Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences.  It implies that a decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group.

*Nabozny v. Podlesny*, 92 F.3d 446, 453-54 (7th Cir. 1996) (quoting *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)).  Specifically, to show disparate treatment, an inmate

must allege that he was treated differently than another inmate in the same situation. *Cardenas v. Washington*, 12 F. App'x 410, 412 (7th Cir. 2001).

Here Plaintiff has alleged generally that he was treated badly because of his Pagan beliefs, but he has not alleged that other inmates were treated differently. Specifically, Plaintiff has not alleged that any other inmates engaged in the same course of conduct, but were not subject to discipline because they were not Pagans. For this reason, Plaintiff has not adequately alleged an equal protection claim and **Count 11** will be dismissed without prejudice.

Plaintiff has also alleged that he was retaliated against because of his sexual orientation in **Count 16**. Plaintiff has not identified his sexual orientation. He has not alleged that others outside of his protected class were treated differently. On these facts, Plaintiff allegations are insufficient. In order to determine whether Plaintiff has stated a claim, the Court must be aware of what orientation Plaintiff identifies with. Plaintiff must also plead that others outside of his protected class who engaged in the same conduct were treated differently. On these facts, Plaintiff's claims in **Count 16** will be dismissed without prejudice.

Plaintiff also brings many claims surrounding the treatment of his journal, which he repeatedly characterizes as a "legal work-product journal." The Court has not adopted this designation, as it is inappropriate. Plaintiff alleges that the entire journal is protected attorney work product and privileged, based on the fact that he labeled it that way and because it contained accounts of staff treatment that Plaintiff believed may

have violated his constitutional rights.   Plaintiff has not alleged that he has ever retained an attorney in connection with any civil claims he wished to bring against corrections staff.

Describing his journal as work-product is meaningless at this stage in the proceedings.   While Federal Rule of Procedure 26(b)(3) states that "[o]rdinarily a party may not discover documents and tangible things that are prepared in anticipation of litigation by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)," it creates an exception for materials otherwise discoverable under Rule 26(b)(1) and reserves its most stringent protection "against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Plaintiff as a non-attorney is not entitled to this stringent level of protection.   But that misses the point.   This is a rule governing discovery in litigation.   It does not create a substantive right.   Plaintiff's "work-product rights" were not violated because work-product is an exception to the discovery requirements of the Federal Rules of Civil Procedure, not a constitutional right.   The conduct Plaintiff complains of occurred as part of prison administration and discipline, not discovery.   Work-product is inapplicable.

Plaintiff's journal is also not covered by attorney-client privilege.   Attorney-client privilege extends to confidential communications between client and attorney, made "in order to obtain legal assistance." *Fisher v. United States,* 425 U.S. 391, 403 (1976).   Its purpose is "to encourage clients to make full disclosure to their attorneys," and its

scope is informed by this purpose.  *Id.*   Because the privilege may operate "in derogation of the search for truth," we "construe the privilege to apply only where necessary to achieve its purpose." *United States v. BDO Seidman, LLP,* 492 F.3d 806, 815 (7th Cir.2007) (internal quotation marks and citations omitted). Accordingly, the privilege covers "only those communications which reflect the lawyer's thinking [or] are made for the purpose of eliciting the lawyer's professional advice or other legal assistance." *United States v. Leonard-Allen*, 739 F.3d 948, 952-53 (7th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (Aug. 29, 2013) (*citing BDO Seidman*, 492 F.3d at 815).

Plaintiff has not alleged that he has ever retained an attorney for his civil claims; indeed he has characterized his journal as something he could send to attorneys prospectively.   Without the professional relationship, there is no attorney client privilege.  If Plaintiff is arguing that a privilege exists because Plaintiff is acting as his own attorney, and conversations between attorneys and clients are privileged, this argument is also without merit.  The basis of that privilege is centered around the existence of an attorney-client relationship.  *See Moorhead v. Lane*, 125 F.R.D. 680, 686 (C.D. Ill. 1989) (finding that the attorney-client relationship does not extend to jailhouse lawyers because they are not professionals).  Plaintiff is one person, and cannot by himself establish the existence of an attorney-client relationship. *Naham v. Haljean*, No. 08 C 519, 2010 WL 3025574, at *2 (N.D. Ill. July 30, 2010).  His journal is not privileged as attorney-client work product.

Even if it was, privilege standing alone does not state a constitutional claim. *Maness v. Meyers,* 419 U.S. 449, 466 n. 15 (1975); *Guajardo-Palma v. Martinson*, 622 F.3d 801, 802 (7th Cir. 2010); *Lange v. Young,* 869 F.2d 1008, 1012 n. 2 (7th Cir.1989).     An inmate has no constitutional claim unless he can demonstrate that a non-frivolous legal claim has been frustrated or impeded.  *Lewis v. Casey*, 518 U.S. 343, 352-53 (1996). Plaintiff's assertions that the journal contained notes on his interactions with certain guards that he might have needed to state claims are too vague.  *See Hossman v. Spradlin*, 812 F.2d 1019, 1022 (7th Cir. 1987) ("The mere assertion by appellant . . . that legal papers, transcripts, and law books were intentionally kept from him fails, without more, to demonstrate a constitutionally significant deprivation of meaningful access to the courts.").  Plaintiff has to be specific about what claims he intended to bring and why the loss of the journal impeded those claims.

Plaintiff also alleges that when the officers read his journal, they violated his Fourth Amendment rights to be free from unnecessary searches and seizures.  Plaintiff is incorrect.   A prisoner has no expectation of privacy in his prison cell or in his property therein.

> [S]ociety is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.

*Hudson v. Palmer*, 468 U.S. 517, 526 (1984).

Accordingly, Plaintiff has no constitutional claim regarding the search of his property, and the officers had no obligation to get a search warrant, as Plaintiff claims. Accordingly, **Count 12** will be dismissed with prejudice.

The same reasoning applies to Plaintiff's allegations in **Count 14**. Plaintiff has alleged that the guards opened closed envelopes that contained his creative works and intellectual property. Plaintiff alleges that these materials were "privileged" because he intended to send them to an attorney. As discussed above, that is not the test for privilege, and privilege standing alone does not state a constitutional claim. Plaintiff has not alleged that he was part of an attorney-client relationship at the time of these events, so the materials cannot be considered privileged. In any event, Plaintiff is stretching the definition of privilege too far. Plaintiff has claimed that the "privileged" material was his creative output, and that it was "privileged" because he intended to copyright it. Items or art that has been copyrighted is entitled to certain protections, but screening it from unwanted viewing as part of a security search isn't one of them. Plaintiff also has no privacy right in his creative works as a prisoner.

As to Plaintiff's claims that he was directed to open sealed privileged materials in the presence of the officers, this type of search is permissible under the constitution. The materials are described as communications that Plaintiff had prepared for the benefit of his appellate defender. Prisoners have a limited liberty interest in their mail under the First Amendment. *Thornburgh v. Abbott,* 490 U.S. 401, 407 (1989); *Martin v.*

*Brewer,* 830 F.2d 76, 77 (7th Cir.1987). As a general rule, inmate mail can be opened and read outside the inmate's presence, *Martin,* 830 F.2d at 77, but legal mail is subject to somewhat greater protection.  However, prison officials may open a prisoner's legal mail in his presence. *Wolff v. McDonnell,* 418 U.S. 539, 577 (1974).  The extra protections afforded legal mail are reserved generally for privileged correspondences between inmates and their attorneys. *Id.* at 574.  However, the Seventh Circuit has stated that there must be an "accommodation" between the security needs of the institution, and an inmate's right to access to the courts. *Guajardo-Palma v. Martinson*, 622 F.3d 801 (7th Cir. 2010).  Thus, guards are permitted to search legal mail in the inmate's presence. *Id.*

Under *Wolff,* 418 U.S. at 577, correctional officers may open an inmate's legal mail in his presence in order to inspect for contraband but not to read the mail.  In *Wolff,* the court of appeals reasoned that such a procedure does not chill communication because the inmate's presence insures that officials will not read the mail.  Although the mail at issue in *Wolff* involved incoming rather than outgoing legal mail, there is no distinction between the two.  Therefore, the officers' search of Plaintiff's mail in his presence does not infringe on his constitutional rights and **Count 14** will be dismissed with prejudice.

In **Count 15**, Plaintiff has alleged that Christopher Johnson discussed the contents of Plaintiff's journal with his cellmate, which put the Plaintiff under a reasonable expectation of physical harm.  Plaintiff has not alleged that he experienced any actual harm.  While the Seventh Circuit has said that the probability of harm is enough, *Wright v. Miller*, 561 F. App'x 551, 555 (7th Cir. 2014), Plaintiff's Complaint does

not do enough to put Christopher Johnson on notice of the claims against him. According to the Complaint, all that Christopher Johnson did was conduct an investigation into the factual truth of certain sexual fantasies in Plaintiff's journal in order to determine if a reportable event had occurred under the Prison Rape Elimination Act.  He was entitled to conduct that investigation, and the investigation itself as described did not violate Plaintiff's constitutional rights.  Plaintiff has not alleged that Christopher Johnson deliberately or intentionally spread rumors outside of the investigation.  Plaintiff's Complaint states Christopher Johnson and Plaintiff's cell mate both knew about the contents of the journal, making it reasonable that either one of them could have disseminated the contents of the journal.  It is also not clear whether Plaintiff is alleging that rumors actually resulted from this incident or whether they merely could have resulted.  Plaintiff's Complaint as to **Count 15** is too vague to state a claim under *Iqbal and Twombly*, and will be dismissed without prejudice.

Plaintiff also alleges that he was retaliated against in **Count 17**.  However, unlike Plaintiff's other retaliation claims, this count fails, because the content of his journal is not protected speech.  Whether a prisoner engaged in protected speech is a key component of a retaliation claim, as discussed more fully above.  In *Turner v. Safley*, the Supreme Court articulated the penological interest test: "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  482 U.S. 78, 89 (1987).  The question is

whether the speech at issue is consistent with legitimate penological objectives. *Bridges v. Gilbert*, 557 F.3d 541 (7th Cir. 2009).

Plaintiff alleges that his journal contained depictions of sexual encounters with his cellmate. Plaintiff has been coy on whether these depictions actually happened or whether they were fantasies. He has alleged that this is the content that most intrigued the investigating officers, although he also alleges that the journal contained other content. The sexual fantasies in Plaintiff's journal are not protected conduct because they are inconsistent with the legitimate penological objective with maintaining order and security in the institution. Plaintiff's Complaint alleges that the guards believed that the fantasies may represent a reportable incident under the Prison Rape Elimination Act. Prisons are also permitted to enact rules against sexual contact between prisoners. Plaintiff's speech implying that he may have violated those rules or that he wanted to violate those rules is inconsistent with those objectives and therefore not protected. Plaintiff has only generally described the other content in the journal, and therefore the Court cannot determine if Plaintiff has stated a claim as to that content or not. Plaintiff's retaliation claim for the content of his journal therefore fails, and will be **DISMISSED without prejudice**.

Plaintiff has also attempted to bring claims for the deprivation of his property in **Counts 19 and 21**. Specifically, he alleges that his journal was confiscated and that he was deprived of 6 dollars and 99 cents when prison authorities charged him to mail certain materials out of the institution and then failed to do so. The only constitutional

right that might be implicated by these facts is Plaintiff's right, under the Fourteenth Amendment, to be free from deprivations of his property by state actors without due process of law.   To state a claim under the due process clause of the Fourteenth Amendment, Plaintiff must establish a deprivation of liberty or property without due process of law; if the state provides an adequate remedy, Plaintiff has no civil rights claim.  *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy).   The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims.  *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 Ill. Comp. Stat. 505/8 (1995).   Plaintiff must bring these claims there if he wishes to pursue them. **Counts 19** and **21** will therefore be dismissed with prejudice.

Plaintiff has also named "an unknown" number of John Does in connection with this action.[1]  As noted above, the Court found that Plaintiff stated a claim against John Doe A for retaliation by arranging a disciplinary transfer for Plaintiff to Pickneyville Correctional Center.   John Doe B (Doc. 1, p. 5), has been dismissed from this action already and moved into a new case.  (Doc. 5).  The Court has also found that Plaintiff's allegations regarding John Doe C, who called internal affairs at Pickneyville, fail to state a claim upon which relief could be granted, and so John Doe C is also dismissed from

---

[1] The Court's A-E designation in this paragraph is taken directly from Plaintiff's Complaint, Doc. 1, p. 5.

this action.  Plaintiff has included two other categories of John Doe Defendants, John Does D and E.   Specifically, he has included a catch-all clause to potentially name all defendants in his 2014 case (John Does D).  He also seeks to name any unknown parties who had "knowledge of the wrongs alleged herein, and having the power to prevent them or aid in the prevention therefore neglected to do so." (John Does E)  (Doc. 1, p. 5).  Plaintiff goes on to specify that the actions of these proposed parties are unknown to Plaintiff.

Plaintiff fails to state a claim against any of the potential John Doe D and E defendants under the standards of *Iqbal* and *Twombly*.  This is not the situation where Plaintiff knows facts that may support liability, but does not know names.  Plaintiff concedes that the John Doe E defendants' actions are unknown to him.  He has not alleged any facts against John Does D and E.  Other than the section identifying them, they make no other appearances in the Complaint.  It is still necessary to allege facts against any John Doe defendants.  The designation is not meant to serve as a pre-approved amendment.   For these reasons, John Doe A, is the only remaining John Doe Defendant.  All other John Doe Defendants are **DISMISSED without prejudice**.  The Clerk of Court is **DIRECTED** to correct to docket to reflect that only one John Doe, the placement officer, remains in this action.

Plaintiff has also listed Tyrone Murray in the case caption and included a lone factual allegation against him.  Murray is not listed at all in Plaintiff's statement of claims.  The only factual allegation against Murray is that he rejected the ghostwritten

grievances that Plaintiff prepared for his fellow co-religionists. Even if Plaintiff had included Murray in his statement of claims, this allegation would not be sufficient to state a claim upon which relief could be granted. Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause per se. As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Therefore the claims against Murray will be dismissed with prejudice.

## Pending Motions

Plaintiff filed a motion to proceed IFP in conjunction with the Complaint. (Doc. 2). Plaintiff has submitted an affidavit that he currently has no assets or income with which to pay the filing fee. The Court accepts this representation. Plaintiff's Motion to proceed IFP is **GRANTED**. (Doc. 2). Because Plaintiff is proceeding pro-se, the Court will order service on Defendants, therefore Plaintiff's Motion for Service at Government Expense is **MOOT**. (Doc. 3).

## Disposition

**IT IS HEREBY ORDERED** that **COUNTS 1-6** against Leek, McCabe, Schwartz, Flagg, Pitts, Downs, Austen, Christopher Johnson, Drannan, Stephen Johnson, Mathias,

McCance, John Doe placement officer, Brunton, and Ritzheimer survive threshold review.

**IT IS HEREBY ORDERED** that **COUNTS 7-21** fail to state a claim upon which relief may be granted. **COUNTS 7-8, 11, 15-17, and 20** are **DISMISSED without prejudice**. **COUNTS 9-10, 12-14, 18-19** and **21** are **DISMISSED with prejudice**. Defendant Hemker is **DISMISSED without prejudice**. Defendant Murray is **DISMISSED with prejudice**. Any remaining John Does, other than the John Doe placement officer, are **DISMISSED without prejudice**.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants Flagg, Leek, McCabe, Downs, Drannan, Pitts, Schwartz, Christopher Johnson, Stephen Johnson, Mathis, Burton, Ritzheimer, McCance, and Austin (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John Doe) Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint.

Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Williams for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 5, 2016**

s/ MICHAEL J. REAGAN

**U.S. District Judge**